[Crim. No. 15032. Second Dist., Div. Three. May 29, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. ELMER T. HAWKINS, Defendant and Appellant.

Josef Dubiel, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Bradley A. Stoutt and Bernard S. Kamine, Deputy Attorneys General, for Plaintiff and Respondent.

COBEY, J.—This is an appeal following a nonjury trial from a judgment of conviction of the felony of possession of marijuana (Health & Saf. Code, § 11530) and from an order denying appellant a new trial. The latter order is not separately appealable. (See Pen. Code, § 1237, subd. 1.)

The two grounds of appeal are: (1) reversible error was committed in admitting the marijuana into evidence because the police obtained it through an unconstitutional search and seizure; (2) the evidence in support of the conviction is insubstantial.

It appears to us that the evidence of appellant's guilt is substantial. (See *People* v. *Groom,* 60 Cal.2d 694, 696-697 [36 Cal.Rptr. 327, 388 P.2d 359].) We nevertheless reverse because the police searched appellant's jacket and bindle and seized the marijuana therein without first obtaining a search warrant authorizing such search.

### THE EVIDENCE

On November 2, 1967, at approximately 12:30 a.m., Melvin H. Lunsford, a Los Angeles police officer assigned to a vice detail, was in the Casbah Bar with his partner on a nonnarcotics investigation. He leaned against a bar stool and in doing so by chance placed a hand on a green jacket which was on the stool and which had pink paint stains on it. A package of zigzag cigarette papers immediately fell from the jacket and Lunsford noticed an edge of what looked to him like a newspaper bindle protruding from a corner of the pocket of the jacket upon which his hand was resting. Lunsford felt beneath his hand a sort of soft, large bindle which he then squeezed and felt to be "sort of granular in substance." On the basis of these three things—the zigzag papers, the glimpse of what appeared to be the edge of a bindle, and the squeezing of the bindle itself, Lunsford decided that the bindle might contain marijuana.

However, before going into the jacket to determine just what the bindle contained, Lunsford made inquiry of the barmaid and the three men at the bar, including appellant, as to the ownership of the jacket. He asked the barmaid whether she had seen anyone wearing it. She replied she had not. He then asked her if she knew whose coat it was; she said she did not. He then asked each of the three men whether he owned the jacket and each disclaimed ownership. It was quite apparent from the respective sizes of the two men other than appellant that the jacket was too small for either of them.

Lunsford then pulled the bindle out of the jacket and unwrapped it. It was composed of an outer wrapping of newspaper, an inner wrapping of a paper napkin and inside both of these a rolled sandwich bag. He looked within the sandwich bag and saw that the bag contained a green and brown leafy substance which resembled marijuana. Subsequently at the trial the contents of the package were established to be marijuana.

The green jacket had heavy blotches of pink paint on its right shoulder and another such blotch across the right hand bottom portion of the back. It also had some splatter spots on the sleeves and on the front. The two blotches were still very sticky to the fingers.

Of the three men in the Bar, only appellant had pink paint on him. He had this paint on his hands and arms and splatters of it on his tee shirt, trousers and shoes. By inquiry Lunsford learned that only appellant had been using pink paint. He had been painting the ladies' restroom pink. After advising appellant of his constitutional rights Lunsford asked appellant if he knew anything about the green jacket. Appellant replied that he did, that he had found it on the floor of the Bar near the pool table and had placed it on the bar stool.

Apparently Lunsford then checked the paint in the ladies' restroom and found it to be still sticky to the fingers. He then arrested appellant for possession of marijuana and took him to the police station. At the police station Lunsford had appellant try on the jacket; it fit perfectly.

Appellant took the stand in his own defense. He explained that he had been painting the ladies' restroom at the Bar with a roller for about four hours before the police arrived and that an hour or two before their arrival he had stopped to have a beer at the bar. He had already gotten paint on his hands while he was painting the ceiling and on his way over

to the bar he noticed the green jacket on the floor near the pool table. He had picked up the jacket and put it on the bar stool. In the process of doing so he had transferred pink paint from his hands to the jacket. He did not know what was in the jacket and the marijuana that was found there was not his.

## The Unconstitutionality of the Search For and Seizure of the Marijuana

 The constitutional protection extended to persons by the Fourth Amendment to the United States Constitution and by its counterpart in the California Constitution, article I, section 19, is "to be free from unreasonable governmental intrusion." (*Terry* v. *Ohio*, 392 U.S. 1, 9 [20 L.Ed.2d 889, 899, 88 S.Ct. 1868].) A constitutional search must be reasonable in its inception, intensity and scope. (*Terry* v. *Ohio, supra,* at pp. 18-19 [20 L.Ed.2d at pp. 903-904].) "[T]he scope of the search must be 'strictly tied to and justified by' the circumstances which render its initiation permissible." (*Terry* v. *Ohio, supra,* at p. 19 [20 L.Ed.2d at p. 904].) In other words, each governmental intrusion upon a citizen's personal security must be reasonable in all its circumstances. (*Terry* v. *Ohio, supra,* at p. 19 [20 L.Ed.2d at p. 904].)

 In this case the presence of Officer Lunsford and his partner in the Casbah Bar at approximately 12:30 a.m. was in the course of their police duties. Lunsford's placing of one of his hands on the jacket, while it rested on a bar stool, was entirely fortuitous. But, when he did so, he simultaneously felt in the pocket beneath his hand a sort of soft, large bindle and saw some zigzag cigarette papers fall from the jacket and what appeared to be an edge of a newspaper bindle protruding from a corner of the pocket on which his hand rested. He then squeezed the bindle and felt a sort of granular substance.

Lunsford was an experienced police officer. He had made approximately 400 narcotics arrests. Over half of these involved zigzag cigarette papers and when he found zigzag papers, marijuana was usually near at hand. Furthermore, he had on numerous occasions encountered marijuana wrapped in newspaper bindles[1]—perhaps 15 to 20 percent of the time and "maybe more." On the basis of his feel of the bindle and his glimpse of a corner of it and of the zigzag cigarette

[1] Of course, zigzag cigarette papers may be used legitimately as Officer Lunsford conceded in his cross-examination and as he also conceded narcotics bindles are often wrapped in coverings other than newspaper.

papers, Lunsford reasonably suspected that the bindle under his hand might contain marijuana. In other words, at this point Lunsford had probable cause to search the jacket and the bindle for marijuana. ■ But ordinarily probable cause for search, standing alone, cannot justify constitutionally a search without a warrant therefor. (see *People v. Marshall*, 69 Cal.2d 51, 57, fn. 2 [69 Cal.Rptr. 585, 442 P.2d 665]; *People v. Ramsey*, 272 Cal.App.2d 302 [77 Cal.Rptr. 249].)

■ The Attorney General, in a very able brief, has attempted to justify this warrantless search of the jacket and the bindle on four different grounds. He first argues that the search was incident to appellant's subsequent lawful arrest. However, our Supreme Court stated in *Marshall, supra*, at p. 61, that "A search that is substantially contemporaneous with arrest may precede the arrest, *so long as there is probable cause to arrest at the outset of the search.*" (Italics ours.) The outset of Lunsford's search in this case occurred when he squeezed the bindle to see whether he could learn more through his sense of touch regarding its contents than he then knew. At the time of the squeezing all that Lunsford knew was that there was under his hand, within the pocket of the jacket, a package apparently wrapped in newspaper and that the jacket had contained, until he touched it, some zigzag cigarette papers. As we have already stated, these facts gave rise in Lunsford's mind to a reasonable suspicion that the bindle within the jacket might contain marijuana. But *at this point* there was nothing to connect the possible presence of marijuana in the jacket with appellant. Consequently Lunsford then lacked probable cause to arrest appellant for the possession of this marijuana and, therefore, under the quoted rule of *Marshall*, Lunsford's warrantless search of the jacket and bindle cannot be upheld on the ground that this search was incident to appellant's lawful arrest.

The Attorney General next argues that the seizure of the marijuana was proper since the marijuana was "in plain view." This contention is factually incorrect. The marijuana in this case was no more in plain sight than the sweet-smelling marijuana within the brown paper bag was in *Marshall*. (See 69 Cal.2d 51, 55, 58-59 [69 Cal.Rptr. 585, 442 P.2d 665].) Even Lunsford acknowledged that from his squeezing of the bindle within the jacket neither he nor anyone else could tell that the bindle contained marijuana.

The Attorney General then asserts that it was reasonable

for Lunsford to undertake an immediate warrantless search of the jacket and the bindle because if he and his partner had waited the nine hours necessary to obtain a search warrant from a magistrate, appellant would have left the Bar and probably destroyed his paint-splattered clothing which linked him to the jacket. In other words, the police would have lost both the criminal and the evidence connecting the criminal to the crime. An argument along these lines was also made and rejected in *Marshall.* The police could have obtained immediate custody of the jacket by suggesting to the barmaid that she turn it over to them as lost property pursuant to Civil Code section 2080.1 subdivision (a) and appellant could have been detained in the Bar long enough to question him about his relationship to the jacket, and if he consented, to try it on him.

It seems to us that the facts of this case do not bring it within any of the recognized exceptions to the rule of law generally requiring the issuance of a search warrant as a condition precedent to constitutional search. There was no grave emergency excusing noncompliance with this requirement. (See *McDonald* v. *United States,* 335 U.S. 451, 454-455 [93 L.Ed. 153, 157, 158, 69 S.Ct. 191].) Likewise, although the jacket was not a "fixed piece of property" (see *Cooper* v. *California,* 386 U.S. 58, 59 [17 L.Ed.2d 730, 732, 87 S.Ct. 788]) we do not think that we may exempt a search of it from this requirement on this basis, because unlike an automobile, an article of clothing, such as this jacket, is not a self-propelled object of great intrinsic mobility. Both the open box containing the brown paper bag of marijuana and the brown paper bag itself, which were involved in *Marshall,* were as movable as the jacket which we have here.

Finally, the Attorney General argues that we should nevertheless apply the rationale of *Cooper* v. *California, supra,* and hold that, since the police could have obtained possession of the jacket as lost property, we should treat Lunsford's search of the jacket as a proper search for indicia of its ownership. The fundamental trouble with this position is not its variance with Lunsford's own testimony as to the reason for his search of the jacket and of the bindle, but that Lunsford commenced this search by squeezing the bindle before he knew that the jacket was possibly a lost jacket. Moreover, as we noted earlier in this opinion, the *scope* of a search must be strictly tied to and justified by the circumstances which rendered its initiation permissible. (*Terry* v. *Ohio, supra,* 392 U.S. 1, 19

[20 L.Ed.2d 889, 904, 88 S.Ct. 1868].) Thus, even if the search of the jacket itself were constitutionally permissible as a search of lost property for indicia of its ownership, the search of the bindle could not be so justified because normally a bindle, as the container of probable contraband, would not contain such indicia. Finally, under *Cooper* and *Preston* v. *United States*, 376 U.S. 364 [11 L.Ed.2d 777, 84 S.Ct. 881], as interpreted in *Cooper* at p. 61 [17 L.Ed.2d at p. 733], a warrantless search of property in police custody is constitutionally justifiable only if such search is closely related to the purpose of the custody. This combination of circumstances did not occur in this case.

The judgment (order granting appellant probation) is reversed. The purported appeal from the order denying appellant a new trial is dismissed.

Ford, P. J., and Schweitzer, J., concurred.

A petition for a rehearing was denied June 25, 1969, and respondent's petition for a hearing by the Supreme Court was denied August 13, 1969. Mosk, J., and Burke, J., were of the opinion that the petition should be granted.