[Crim. No. 16430. Second Dist., Div. Three. Apr. 20, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT EDWARD LONG, Defendant and Appellant.

## COUNSEL

Robert Edward Long, in pro. per., and Marshall K. Gordon, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Mark Leicester, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**ALLPORT, J.**—By information defendant was charged in count I with violation of Penal Code section 459 (burglary) and in count II with a violation of Penal Code section 496 (receiving stolen property). Defendant pleaded not guilty. Petitions for a writ of habeas corpus and motions to set aside the information (Pen. Code, § 995) and to suppress evidence (Pen. Code, § 1538.5) were denied. Following trial by jury defendant was found not guilty as to count I and guilty as to count II. Probation was denied and defendant sentenced to state prison for the term prescribed by law. He has appealed from the judgment. By order of this court pursuant to rule 12(a), California Rules of Court, the record has been augmented to include the transcript of the preliminary hearing in this case.

### Facts

In October 1968 Ann O'Rourke was in the process of moving from 1147 Lincoln Boulevard to 1024 7th Street in Santa Monica. Defendant was employed by her to assist in the packing and moving. Defendant's wife was present on the premises on several occasions. On October 16 Mrs. O'Rourke discovered that her home had been entered and a number of valuable items of clothing, jewelry and furnishings removed from the house. Included were a watch, gold beads, pearls, perfume, nylons, needlepoint, rugs, a purse, a photograph, a Pope John XXIII medallion and a fur stole. The discovery was reported to the police and an investigation followed. The investigation revealed that entry had been made by way of a ladder set up against the house. A new window screen had been broken. Certain of the articles taken were subsequently displayed to her by the police. Prior to October 16 defendant's wife had had occasion to use the bathroom facilities at this home and had stopped up the toilet by use of excessive amounts of toilet tissue. The plumber had to be called to relieve the situation. The investigation following the events of October 16 disclosed a similar condition to exist in the bathroom, requiring a second call to the plumber. Defendant had not

been given a key to the premises or authorized to remove any of these items. No other men had been hired during this period.

Jamie Maxine Claxton, manager of the Shearon Hotel in Ocean Park, testified that during a portion of the month of October 1968 defendant and his wife occupied room 20 at the hotel. Defendant advised her that he and his wife were going to return to Indiana. Mrs. Claxton observed him packing during the morning of October 16, the day the officers came to the hotel. She never saw defendant again until the day of trial.

Investigating Officer Richard A. Plasse confirmed Mrs. O'Rourke's testimony as to the manner of entry into the victim's premises. He also testified that after examining the O'Rourke home he went to the Shearon Hotel. He was advised there that defendant and his wife had been residing in room 20. That room was padlocked from the outside and there was no response to a knock. Viewing the room from the fire escape through a window, Officer Plasse saw that it had been vacated except for a suitcase lying under a table. The suitcase was open and the officer could see that it contained a couple of old shoes. He gained entry to the room and discovered the medallion in the suitcase. He received further information regarding defendant's possible whereabouts from Mrs. Claxton.

Investigating Officer Lewis Reck testified that, having received a detailed description of defendant and his wife and having obtained information from the victim and from Officer Plasse to the effect that defendant would be leaving the Los Angeles airport at 10:40 a.m. on a specified flight to Indiana, he went to the airport, there identified defendant and his wife, and placed them under arrest for burglary and receiving stolen property. The luggage in their immediate possession was then searched; no stolen property was found. Defendant was asked whether they had baggage on the plane. He replied in the affirmative, handed the officer some baggage checks, and gave him permission to inspect those items. That inspection revealed a number of the stolen items.

At the airport, after the arrest and recovery of the evidence, defendant was given the standard warnings required by *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. Defendant said that he understood them and that he wished to talk about the matter, stating, "Yes, I will talk about it. I am clean." No further conversation was had at the airport. Both defendant and his wife were then taken to the police station and questioned. They denied their guilt. They never indicated a desire for counsel nor an aversion to being questioned. The interrogation of defendant continued the day following the arrest. On that day Mrs. Long requested to talk to Officer Reck and gave a written confession. Later in the day the officer showed the confession to defendant, who said that he

wanted to talk with his wife. He was permitted to do so privately. Following this discussion defendant was interviewed again by the officer and made a series of incriminating statements which were recorded but not signed. Officer Reck denied having made any threats or promises to defendant or having represented to defendant that he (Officer Reck) had some influence over the probation department. He also denied having told defendant that things would be better for defendant's wife if he made a statement.

Defendant testified in many respects contrary to the testimony of the officers. However, he admitted that after his arrest he was advised of his constitutional rights. He stated that he and his wife were harrassed, yelled at, threatened, and promised leniency in connection with his refusal to sign his statement. He denied having made the statements to Officer Reck. He denied that he had broken into the O'Rourke home or taken any property but admitted knowing that the stole belonged to Mrs. O'Rourke and that it was taken by his wife.

On cross-examination defendant was asked as follows: "Q. Have you ever been convicted of a felony? A. Yes, I have. Q. How many? A. Five." In response to a subsequent question, he then described two convictions for breaking and entering, a federal conviction under the Dyer Act, and convictions for car theft (joy-riding) and for grand theft.

### Contentions

It is contended on appeal that: (1) defendant was forced to confess or to make incriminating statements in violation of *Miranda* v. *Arizona, supra,* 384 U.S. 436; (2) the search of the suitcase at the Shearon Hotel was unlawful and the evidence obtained therefrom (the medallion) was improperly received at trial; (3) the search of the luggage at the airport was unlawful and the evidence obtained therefrom (the stolen property) was improperly received at trial; (4) the trial court erroneously instructed the jury that a prior felony conviction may be used to establish guilt; and (5) the cross-examination of defendant regarding prior felonies was improper and prejudicial. Additional issues are raised in supplemental papers filed by defendant in propria persona.

### Discussion

Defendant first argues that there was no real waiver of his *Miranda* rights and that, even if there was a waiver, it was made on the day of the arrest and was not sufficiently contemporaneous with the subsequent interrogation and the obtaining of the confession on the following day to obviate the necessity of a second *Miranda* warning. The testimony of Officer Reck supports a finding that defendant was properly administered his rights at

the time of his arrest and freely and voluntarily waived them. At that time defendant said that he understood the admonition and wished to talk about the matter, he authorized a search of his luggage, and he did not ask for the services of counsel. Later that day he denied his guilt; and the following day, without a repetition of the warnings, having been interrogated further and advised of his wife's confession, he made the confession in question.

In *People* v. *Robinson,* 274 Cal.App.2d 514 [79 Cal.Rptr. 213], this court said: "At the outset of our discussion, recognition must be given to the rule that it is largely the function of the trial court to resolve factual conflicts in the evidence. This rule applies to conflicts with respect to the question whether a defendant's confession was voluntary, and to whether he knowingly and intelligently waived his constitutional rights to silence and counsel before making it. (*People* v. *Midkiff,* 262 Cal.App.2d 734, 739 [68 Cal.Rptr. 866]; *People* v. *Valencia,* 249 Cal.App.2d 370, 377 [57 Cal. Rptr. 567].) The trial court's determination on such issues will not be disturbed on appeal unless it is 'palpably erroneous.' (*People* v. *Stafford,* 240 Cal.App.2d 422, 424 [49 Cal.Rptr. 598]; *People* v. *Midkiff, supra,* at p. 739; *People* v. *Valencia, supra,* at p. 377.)" (274 Cal.App.2d at p. 520.)

In the light of the foregoing it does not appear that the techniques used by the police in obtaining the unsigned confession from defendant were either improper or violative of his rights. Officer Reck denied the use of coercion, violence, threats, or promises. Advice, unaccompanied by threats or promises, and the use of the confession of a confederate are not constitutionally prohibited procedures. In *People* v. *Hill,* 66 Cal.2d 536 [58 Cal.Rptr. 340, 426 P.2d 908], the Supreme Court of this state said: "The line to be drawn between permissible police conduct and conduct deemed to induce or to tend to induce an involuntary statement does not depend upon the bare language of inducement but rather upon the nature of the benefit to be derived by a defendant if he speaks the truth, as represented by the police. Thus, 'advice or exhortation by a police officer to an accused to "tell the truth" or that "it would be better to tell the truth" unaccompanied by either a threat or a promise, does not render a subsequent confession involuntary.' (*People* v. *Nelson* (1964) 224 Cal.App.2d 238, 250 [36 Cal.Rptr. 385], and citations appearing there.)" (66 Cal.2d at p. 549.) Further, in *People* v. *Robinson, supra,* 274 Cal. App.2d 514, this court stated: "A policeman's advice or exhortation to an accused to 'tell the truth,' or that 'it would be better to tell the truth,' where accompanied by neither threat nor promise, does not render involun-

tary a subsequent confession. (*People* v. *Hill,* 66 Cal.2d 536, 549 [58 Cal. Rptr. 340, 426 P.2d 908].) ██ Since the advice defendant was given was unaccompanied by any threat or promise, it did not constitute an improper inducement. [¶] It was not an improper inducement for the officers to inform defendant that his confederate had confessed. ██ 'Good faith confrontation with the confessions of other accomplices is an interrogation technique possessing no apparent constitutional vice.' (*People* v. *Lantz,* 265 Cal.App.2d 5, 8 [fn. 4] [71 Cal.Rptr. 188]; see also *People* v. *Hill, supra,* at p. 548 and *People* v. *Schwartzman,* 266 Cal.App.2d 870, 885 [72 Cal.Rptr. 616].)" (274 Cal.App.2d at pp. 520-521.) (See also *People* v. *Sunday,* 275 Cal.App.2d 473, 480-481 [79 Cal.Rptr. 752].) Questions concerning the lapse of time between the giving of *Miranda* warnings and a confession and concerning the need, if any, for repetition of the warnings have recently been considered and discussed by the appellate courts of this state. In the absence of special factors indicating the need for such repetition, one warning has been held to be sufficient. (*People* v. *Johnson,* 70 Cal.2d 469, 477 [74 Cal.Rptr. 889, 450 P.2d 265]; *People* v. *Sievers,* 255 Cal.App.2d 34, 37-38 [62 Cal.Rptr. 841]; see *People* v. *Banks,* 2 Cal.3d 127, 135 [84 Cal.Rptr. 367, 465 P.2d 263].) Each case is to be determined upon its own facts. (*People* v. *Johnson, supra,* at p. 477.) ██ In the instant case there was no undue lapse of time between the warning and the subsequent interrogation. The record supports the conclusion that no improper conduct on the part of the authorities was exercised in the securing of the confession. ██ A determination by the trial court that defendant waived his *Miranda* rights will not be disturbed unless it is palpably erroneous. (*People* v. *Daniels,* 1 Cal.App.3d 367, 374-375 [81 Cal.Rptr. 675]; *People* v. *Inman,* 274 Cal.App.2d 704, 708 [79 Cal.Rptr. 290].) No such showing has been made in the case at bar.

██ Defendant contends that the warrantless search of the suitcase at the Shearon Hotel was unlawful and that the evidence (the medallion) obtained as a result was improperly received in evidence. We do not agree. The record supports the finding that the hotel room previously occupied by defendant had been vacated and the suitcase in question abandoned prior to the officer's entry and discovery of the contraband. The manager had been advised that defendant was leaving. She had seen him packing. The room was observed from the outside to have been vacated. The evidence supported the conclusion that defendant's tenancy had been terminated and the suitcase abandoned. ██ A search and seizure of abandoned

property is not unlawful. (*Abel* v. *United States*, 362 U.S. 217 [4 L.Ed.2d 668, 80 S.Ct. 683]; *People* v. *Smith*, 63 Cal.2d 779, 800-801 [48 Cal. Rptr. 382, 409 P.2d 222].) *Chimel* v. *California*, 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], cited by defendant, does not hold to the contrary and in any case is not applicable to the search involved here, which occurred prior to June 23, 1969 (*People* v. *Edwards*, 71 Cal.2d 1096, 1107-1110 [80 Cal.Rptr. 633, 458 P.2d 713]). Defendant also cites the recent case of *People* v. *Hawkins*, 273 Cal.App.2d 529 [78 Cal.Rptr. 286]. *Hawkins* is clearly distinguishable factually and furthermore contains no statement of law contrary to the conclusion reached herein.

 Defendant next contends that the search of his luggage at the airport following his arrest was unlawful and that the evidence obtained as a result was improperly received in evidence. We do not agree. A warrantless search contemporaneous with a lawful arrest is not illegal. (*People* v. *Williams*, 67 Cal.2d 226, 229-231 [60 Cal.Rptr. 472, 430 P.2d 30].) Defendant does not argue that the arrest at the airport was unlawful. His contention is based upon the doctrine of *Chimel* v. *California, supra*, 395 U.S. 752, and *People* v. *Hawkins, supra*, 273 Cal.App.2d 529. *Hawkins* does not conflict with our holding, for in that case, unlike this case, there was no probable cause for arrest prior to the search. As was pointed out above, under *People* v. *Edwards, supra*, 71 Cal.2d 1096, the *Chimel* doctrine is not retroactive to an arrest made prior to June 23, 1969.

 Defendant also contends that the trial court erroneously instructed the jury that "a prior felony conviction may establish guilt." In connection with the jury's consideration of the effects of evidence of prior felony convictions the record reflects the following to have taken place during cross-examination and prior to the submission of the matter to the jury:

"BY MR. TROTT [deputy district attorney]: Q. Mr. Long, have you ever been convicted of a felony? A. I have. MR. GERBAC [defense counsel]: Your Honor, I will object at this point on the grounds, although it has not been decided by the Court, I think this is an improper type of cross-examination, an impeachment. I think it is irrelevant and highly prejudicial, and prejudicial of such nature that it violates certain guaranties of the Constitution to due process, and a man should be charged and tried individually on the present offense. On these grounds I will object to this line of cross-examination. MR. TROTT: If the Court please, I would

request the Court to instruct the jury as to the sole reason for the admissibility of this evidence under the law in California. THE COURT: It is the law of California that conviction of a felony may be shown in connection with a person charged with a crime. It is to be received as tending to establish their guilt. It is to be received in connection with credibility to be accorded the testimony of the witness. MR. TROTT: Thank you. THE COURT: I believe that is what the cases hold is the only basis for it. MR. TROTT: Yes. And the only issue that the People are offering the evidence of prior felony convictions on is the issue of believability or credibility of this witness. Thank you. THE COURT: The objection is overruled. You may answer. Q. BY MR. TROTT: Have you ever been convicted of a felony? A. Yes, I have. Q. How many? A. Five. Q. What? A. I have been convicted of, I believe, one burglary, one grand larceny, or two grand larcenies in two car thefts."

After the conclusion of the testimony the jury was instructed in the usual form that in determining the credibility of witnesses the jury was to consider defendant's prior conviction of a felony. No complaint was made as to the instruction given during the trial. There was no request for clarification at that time or at the formal instructing of the jury at the conclusion of the evidence. It would appear from the record that the word "not" was inadvertently omitted from a portion of the preliminary charge and that error was thereby committed. The question is whether or not such error was prejudicial. We do not believe so. The record discloses an abundance of evidence to support defendant's conviction of receiving stolen property irrespective of his testimony regarding felony convictions. The failure on the part of anyone to request clarification indicates the fact that there was generally a lack of appreciation for the possibility either of the error's actually having occurred or of its having had any prejudicial effect. The failure to seek clarification may be deemed a waiver. (*People v. Larke*, 246 Cal.App.2d 571, 576 [54 Cal.Rptr. 834]; *People v. Sogoian*, 232 Cal.App.2d 430, 434 [42 Cal.Rptr. 736].) In any event we are satisfied beyond a reasonable doubt that the error, if actually committed, was inadvertent and did not result in a miscarriage of justice. (*Harrington v. California*, 395 U.S. 250 [23 L.Ed.2d 284, 89 S.Ct. 1726]; *Chapman v. California*, 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].)

 Finally defendant contends that under the case of *People v. Perez*, 58 Cal.2d 229 [23 Cal.Rptr. 569, 373 P.2d 617, 3 A.L.R.3d 936], it was prejudicial error to permit questioning of defendant on cross-examination regarding his conviction of "five" prior felonies. We do not agree. *Perez* is not factually in point and does not stand for the legal proposition urged on this appeal. A witness may be impeached by proof of more than one felony and a simple description is permitted. (*People v.*

*Eldridge,* 147 Cal. 782, 786-787 [82 P. 442].) There would be no justification for concluding, from the brief consideration given to the number and character of the prior convictions, that the subject was unduly emphasized to defendant's prejudice. Moreover, it does not appear that defendant objected to the interrogation. By failing to object defendant waived the error, if any such existed.

It is noted that defendant has filed a motion for an order permitting his personal participation at the oral argument of this case. This motion was denied. We did, however, permit the filing of, and have considered, defendant's in propria persona brief and supplemental brief, as well as his motion to strike appointed counsel's brief. None of these papers is persuasive of conclusions other than those expressed herein.

The judgment is affirmed.

Cobey, Acting P. J., and Schweitzer, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 17, 1970.