[Crim. No. 36805. Second Dist., Div. One. Aug. 17, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT JAMES INGRAM, Defendant and Appellant.

**COUNSEL**

Bledstein & Lauber and I. Mark Bledstein for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari and Otis D. Wright, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**LILLIE, J.**—After submitting the cause to the trial court on the transcript of testimony taken at the preliminary hearing, defendant was found guilty of possession for sale of cocaine. He appeals from the judgment. His contentions relate solely to the denial of his motion to suppress pursuant to section 1538.5 of the Penal Code.

As Emma Brown, a maid at the Olympian Hotel, was cleaning room 231, which was a "check out" that morning, she found a briefcase under the bed; she told Mrs. O'Bryant, the housekeeper, about it and turned it over to her to be placed in lost and found. Mrs. O'Bryant delivered the briefcase to Mr. Jacoby, the hotel manager, who opened it and found several transparent plastic bags and one large such bag filled with white powder; he took the briefcase into the back office, and the police were called.

When Officer Gossett arrived Mr. Jacoby told him "I'd like you to take a look at a case"; he then looked at an opened briefcase[1] and ob-

---

[1]Officer Gossett testified he was shown an open briefcase containing the plastic bags in which was a white powder; Mr. Jacoby testified that he gave the officer the briefcase which was closed. Confronted with this apparent conflict at the preliminary hearing the magistrate accepted the testimony of the police officer over the recollection of Mr. Jacoby, who he felt had been preoccupied with his vacation plans, was waiting to leave

served a quantity (331.1 grams) of what he believed to be cocaine in plastic bags, other small bags, photos and a strainer. The officer asked for information concerning the party who had rented the room, and Jacoby showed him a registration receipt which indicated the same person (Robert Ingram) had rented room 231 and room 230, directly across the hall; Jacoby gave him a description of defendant (Robert Ingram) and a pass key.

The door to room 230 was closed and the officers knocked, identified themselves and stated their purpose; there was no response, and they entered by using the pass key. The room was empty except for an oblong wooden box. Based on his experience in narcotic enforcement, Officer Gossett assumed that it contained a scale; he opened the box and found "a very nice scale" leading him to believe that whoever rented the room did not intend to leave it behind; thus, three officers waited in room 230 and three entered room 231 across the hall, the door of which had been opened because the maid was cleaning the room.

The officers closed the door to room 231 and after waiting about 15 minutes, Officer McClelland heard a key being inserted in the lock; he looked through the peephole and observed defendant, but by the time the officers had fumbled with the lock for three or four seconds to get the door open defendant had fled. After a chase through the corridor and out an exit door, defendant was apprehended.

■ Citing *United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed. 2d 538, 97 S.Ct. 2476], appellant claims the officers had no right to search the briefcase, arguing that when the officers "received word telephonically that a citizen was in possession of a briefcase containing contraband they were required to obtain a warrant." The contention is without merit.

First, Sergeant Maga told Officer Gossett only "that the manager of the Olympian Hotel had called and stated that he had found a briefcase and it had a large quantity of white powder in it that he thought might be narcotic." Second, Sergeant Maga directed Officer Gossett to go to the hotel to investigate. Third, when Officer Gossett arrived, he imme-

for San Diego and merely wanted to rid himself of the briefcase. The trial court hearing the section 1538.5 motion de novo also commented "Officer Gossett testified, contrary to Mr. Jacoby, that to the effect that the briefcase was open when he went to Mr. Jacoby's office."; obviously the court accepted the testimony of the police officer as true. We are bound by this resolution of factual conflict.

diately contacted Mr. Jacoby who told him that a maid found the brief-case while cleaning a room she believed to have been vacated and took it to her supervisor who brought it to him, and he (Jacoby) opened it and observed a white powder.[2] Fourth, Mr. Jacoby showed him the briefcase and said "take a look"; "the briefcase was open" and the officer observed in plain sight in the open briefcase numerous plastic bags; the bags were transparent and he could see their contents—white powder—that he as an experienced narcotic officer believed to be cocaine.

Officer Gossett was in Mr. Jacoby's office at his request; the brief-case had already been opened by Jacoby, who left it open and directed his attention to it; the transparent bags of cocaine were exposed to open view where they were observed by Officer Gossett. The observation of that which is in plain sight of an officer made from a place where he has a right to be does not constitute a search in the constitutional sense (*Harris* v. *United States* (1968) 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069, 88 S.Ct. 992]; *Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 634 [108 Cal.Rptr. 585, 511 P.2d 33]). Thus, Officer Gossett's observation of the cocaine in the transparent bags in the open briefcase was, in fact, no search for evidence (*People* v. *Shepherd* (1973) 33 Cal.App.3d 866, 870 [109 Cal.Rptr. 388]), and the evidence was subject to seizure without a warrant (*People* v. *Hill* (1974) 12 Cal.3d 731, 755 [117 Cal. Rptr. 393, 528 P.2d 1]; *People* v. *Block* (1971) 6 Cal.3d 239, 243 [103 Cal.Rptr. 281, 499 P.2d 961]).

Appellant cites as error the court's failure to suppress the scale because its seizure was unlawful based on his claim of "legitimate expectation of privacy with regard to the contents of the closed container containing the scales." Closely related is his final contention that a search of room 230 was not justified and the manager had no power to consent thereto.

■ Entry by police officers without a warrant to a residence while it is lawfully occupied is not justified by consent given by the owner of the

---

[2]Officer Gossett testified that Mr. Jacoby told him "that the maids were cleaning a room, and they found a briefcase, and they had believed that the persons had left the room, had vacated the room, and, therefore, the maids were there to clean the room up. . . . So, when the maid had found this briefcase, she brought it to a supervisor of hers, another female who, in turn, brought it to Mr. Jacoby. [¶] Mr. Jacoby opened the briefcase, and that is when he observed what appeared to be a narcotic of some sort or a white powder."

building (*People* v. *Escudero* (1979) 23 Cal.3d 800, 808 [153 Cal.Rptr. 825, 592 P.2d 312]). ■ However, abandoned property is subject to search and seizure without a warrant (*Abel* v. *United States* (1960) 362 U.S. 217, 241 [4 L.Ed.2d 668, 687, 80 S.Ct. 683] [search with permission of management of hotel room vacated by defendant and seizure of evidence found in waste basket]; *People* v. *Smith* (1966) 63 Cal.2d 779, 800-801 [48 Cal.Rptr. 382, 409 P.2d 222] [search of abandoned auto and seizure of certain items]; *People* v. *Long* (1970) 6 Cal.App.3d 741, 748 [86 Cal.Rptr. 227] [search of vacated hotel room with consent of manager and seizure of suitcase]). A landlord may consent to a search of premises abandoned by a tenant. (*People* v. *Remiro* (1979) 89 Cal. App.3d 809, 834 [153 Cal.Rptr. 89]; *People* v. *Urfer* (1969) 274 Cal. App.2d 307, 318 [79 Cal.Rptr. 60].)

In denying the motion to suppress, the trial court stated that the maid had established to its satisfaction that the room had been vacated; that the briefcase was found in a room that appeared to have been vacated; and that Jacoby had opened the briefcase and he had properly opened it to identify the owner. Implied in the denial of the motion is the finding that Jacoby gave his permission to the officers to enter and search room 230. Such finding is supported by substantial evidence. The door was open when the officers arrived at room 231 because the maid was cleaning it for the next tenant. As to both rooms it is readily apparent that Jacoby gave his permission to the officers to enter and presented them with a pass key.[3]

As to abandonment of the premises by the defendant, a maid in the hotel, not herself in any way connected with law enforcement, determined that the tenant in room 231 had abandoned the room. She had taken a room count that morning and had "put this room down as a checkout" because "I didn't see anything in it," it looked like no one was there. Later, she returned to the room to clean it for the next tenant; in the process of cleaning she stooped down to pick up a magazine on the floor and saw the briefcase under the foot of the bed on the floor; she took the briefcase to the housekeeper to be placed in "lost and

[3]Officer Gossett testified "at that time I asked him if he knew if anyone was in the room, because he told me that the maid was cleaning the one and he told me that as far as he knew there was in [*sic*] one there, and I asked him if I could take a look in the room and he said yes, you can, and he gave me a pass key." Asked by the court what "the other room" meant, Officer Gossett said "the maid was supposed to be cleaning 231"; then the court asked "so you asked permission to look at room 230?" and he answered "yes."

found." This information and the briefcase were conveyed to Mr. Jacoby by the housekeeper, and when Officer Gossett arrived, he repeated the same information to him. Then he showed Officer Gossett the open briefcase and asked him to take a look at it; after observing the white powder through the transparent plastic bags, Officer Gossett asked Jacoby for the registration card for room 231. The name on the card was "Robert Ingram"; Jacoby told him that the same person had rented two rooms—230 and 231—directly across from each other, the maid was cleaning room 231 and as far as he knew there was no one in it. Mr. Jacoby told him "that it was his opinion that they [the rooms] had been vacated." Officer Gossett then asked if he could take a look in room 230 and Jacoby said "yes, you can" and gave him a pass key.

The trial court made the finding that the scale was found in the room (230) "which for all purposes was abandoned, even though it may have been paid for that particular period of time. The evidence was to the effect the room was abandoned, therefore, there is no right of privacy in that room." We conclude that the evidence supports the finding; but we are also of the view that in any case, the circumstances known to both Jacoby and Officer Gossett, whether or not they constitute abandonment, justified the officer in the reasonable good faith belief that Jacoby had authority to consent to enter and search. (*People* v. *Hill* (1968) 69 Cal.2d 550, 554-555 [72 Cal.Rptr. 641, 446 P.2d 521]; *People* v. *Smith* (1966) 63 Cal.2d 779, 799 [48 Cal.Rptr. 382, 409 P.2d 222]; *People* v. *Remiro* (1979) 89 Cal.App.3d 809, 834 [153 Cal.Rptr. 89]; *People* v. *Urfer* (1969) 274 Cal.App.2d 307, 310 [79 Cal.Rptr. 60].) Since it is only unreasonable searches that are unlawful, Mr. Jacoby's consent provided justification for the entry and search. We conclude that the officers' entry to room 231 and the entry and search of room 230 by Officer Gossett were lawful.

The evidence shows that appearances of room 231 were such as to justify the belief of the maid and Mr. Jacoby that defendant had vacated the room terminating his tenancy with the hotel even though there was an hour and a half prepaid time still remaining, and that room 231 had been abandoned. Advised that the tenant vacated room 231, that the same tenant had paid for room 230 and that it was the opinion of Mr. Jacoby that the two rooms had been vacated, the officers entered room 230 the appearance of which supported the conclusion of Officer Gossett and Mr. Jacoby that the premises had been abandoned. When Officer Gossett knocked on the door, no one responded; when he en-

tered, there was every indication that the room, which was empty, had been vacated. It was then that Officer Gossett found the wooden box. The foregoing was sufficient to support the reasonable and good faith belief that indeed the box as well as the room had been abandoned by the tenant; and such belief was also supported by the very conduct of defendant himself.

■ When one harbors a reasonable expectation of privacy, he is entitled to be free from unreasonable governmental intrusion (*Terry* v. *Ohio* (1968) 392 U.S. 1, 9 [20 L.Ed.2d 889, 898-899, 88 S.Ct. 1868]). The test is whether he has exhibited a reasonable expectation of privacy, and if so, whether that expectation has been violated by unreasonable governmental intrusion. (*People* v. *Edwards* (1969) 71 Cal.2d 1096, 1100 [80 Cal.Rptr. 633, 458 P.2d 713].) Thus, in determining here whether defendant exhibited such reasonable expectation of privacy, consideration must be given to the measures he took to ensure that his privacy would not be intruded upon. His conduct with respect to the wooden box supports a finding that there is little defendant reasonably could have expected in the way of privacy. He rented two rooms in a hotel; he either brought no luggage or removed it earlier that morning; he knew that hotel employees have access to the rooms in a hotel in the exercise of their hotel duties and that the maids enter the room to clean them in the morning, in fact, when one engages a hotel room he gives implied or expressed permission to such persons as maids, janitors or repairmen to enter his room in the performance of their duties. (*Stoner* v. *California* (1964) 376 U.S. 483, 489 [11 L.Ed.2d 856, 860-861, 84 S.Ct. 889]; *United States* v. *Jeffers* (1951) 342 U.S. 48, 51 [96 L.Ed. 59, 64, 72 S.Ct. 93]; *People* v. *Escudero* (1979) 23 Cal.3d 800, 808 [153 Cal.Rptr. 825, 592 P.2d 312].) Defendant left rooms 230 and 231 unattended only an hour or so before the prepaid rental had expired leaving therein no luggage, clothing or personal effects. When he departed room 230, he did so without taking the box with him or taking any precautions to safeguard the privacy of the box. All appearances created by defendant himself pointed to the fact that the room had been vacated by him and the room and box simply had been abandoned.[4] Under the circumstances he hardly could have reasonably expected that his privacy would not be intruded upon.

---

[4]In determining whether an officer acted reasonably we must consider only the facts and circumstances known to him at the time he was required to act (*People* v. *Superior Court (Kiefer)* (1970) 3 Cal.3d 807, 821 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559]). It was not until the box was opened that it became apparent that the item was of such value that it would not have been left behind.

A search and seizure of abandoned property is not unlawful. (*People v. Siegenthaler* (1972) 7 Cal.3d 465, 470 [103 Cal.Rptr. 243, 499 P.2d 499]; *People v. Harris* (1971) 15 Cal.App.3d 498, 501 [93 Cal.Rptr. 285]; *People v. Long* (1970) 6 Cal.App.3d 741, 748 [86 Cal.Rptr. 227].) In *Long* the court held that the finding that the hotel room occupied by defendant had been vacated and the suitcase abandoned prior to the officers entry was supported by substantial evidence. Although the facts differ in some respects from those at bench, the basic law is here controlling. Defendant had previously told the hotel manager he intended to return to Indiana. One morning she saw defendant packing; on the same day an officer investigating a burglary arrived and was advised by the manager that defendant was residing in room 20; the room was padlocked from the outside and no one responded to his knock; while standing on the fire escape, he looked through the window and saw that it had been vacated except for a suitcase under the table. The suitcase was open and in it he observed a couple of shoes; entering the premises he found in the suitcase a stolen medallion. The court rejected appellant's contention that the warrantless search of the suitcase in the hotel room was unlawful and that the medallion was improperly received in evidence, and said at page 748-749: "The evidence supported the conclusion that defendant's tenancy had been terminated and the suitcase abandoned. A search and seizure of abandoned property is not unlawful. (*Abel v. United States* [1960] 362 U.S. 217 [4 L.Ed.2d 668, 80 S.Ct. 683]; *People v. Smith*, 63 Cal.2d 779, 800-801 [48 Cal.Rptr. 382, 409 P.2d 222].)"

We hold the search of room 230 and seizure of the scale to have been lawful but we note with interest that the scale did not constitute an essential element of the crime of which defendant was convicted, i.e., possession for sale of cocaine. The scale, like the quantity of small plastic bags, simply supports the inference that he was engaged in the distribution of cocaine; but this inference is here supportable simply by the large amount of cocaine in the briefcase—331.1 grams, a quantity far in excess of that normally possessed for personal use. (*People v. Goliday* (1973) 8 Cal.3d 771, 778-779 [106 Cal.Rptr. 113, 305 P.2d 537].) Thus, it is apparent that although relevant the scale was not essential to the issue of possession for sale of cocaine, and that any issue relating to the scale is severable from the legal issues supporting the defendant's conviction. Defendant did not plead guilty as in *People v. Rios* (1976) 16 Cal.3d 351 [128 Cal.Rptr. 5, 546 P.2d 293] or *People v. Hill* (1974) 12 Cal.3d 731 [117 Cal.Rptr. 393, 528 P.2d 1], wherein there was nothing in the record to indicate the impact of an erroneous

refusal to suppress evidence on defendant's course of action in pleading guilty and thus involves "an unacceptable degree of appellate speculation" (*People* v. *Hill, supra,* 12 Cal.3d 731, 768; *People* v. *Salazar* (1979) 93 Cal.App.3d 912, 915 [156 Cal.Rptr. 125]), but submitted the cause to the trial court on the testimony taken at the preliminary hearing which transcript is part of the record before us.[5] Here, we are unable to hold under the evidence that the admission of the scales would have prompted defendant to submit the matter on the transcript of the preliminary hearing; or that had the scale been suppressed a result more favorable to defendant would have been obtained (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]). We can only conclude that even if error was committed it was harmless and does not justify a reversal of the judgment (Cal. Const., art. VI, § 13).

The judgment is affirmed.

Spencer, P. J., and Hanson (Thaxton), J., concurred.

A petition for a rehearing was denied September 16, 1981.

---

[5]The magistrate's comment in overruling objection to the scale which appears in the transcript of the testimony taken at the preliminary hearing places the scale in its proper context in relation to the rest of the case: "Just assuming for the sake of argument that the Court were to rule that that was an illegal search, counsel, even without the scale and excising from the testimony, the officer's testimony regarding the scale, there is clearly sufficient cause to hold your client."