632 A.2d 1192

**Michael Anthony BRUNO**

v.

**STATE of Maryland.**

**No. 143, Sept. Term, 1992.**

Court of Appeals of Maryland.

Nov. 17, 1993.

James Wyda, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

David P. Kennedy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, ROBERT M. BELL, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (retired), Specially Assigned.

CHASANOW, Judge.

Petitioner, Michael Anthony Bruno, was tried in the Circuit Court for Harford County on stipulated evidence and was convicted of first degree rape by the trial judge (Whitfill, J.). Bruno appealed his conviction, challenging the admissibility of incriminating statements that he made to three different individuals. At a pretrial motions hearing, the trial judge denied a motion to suppress these statements, and they were included as part of the stipulated evidence. On appeal, the Court of Special Appeals ruled that the statements to two of the three individuals were inadmissible, however, it found their admission was harmless in light of the other overwhelming evidence of guilt. We granted certiorari to consider if improperly admitted statements could be deemed harmless error when a defendant, in order to preserve for appeal the trial court's ruling on a motion to suppress, has pled not guilty and agreed to a trial by stipulated evidence.

## I.

Bruno was charged with first degree rape and related offenses. He pled not guilty and initially elected to be tried by a jury. Prior to trial, Bruno sought to suppress several incriminating statements on the ground that they were obtained in violation of his Sixth Amendment right to counsel. The challenged evidence included (1) "the Smith statement"—Bruno's admission to Norman Smith, a fellow inmate in the Harford County Detention Center, that Bruno had forcibly raped the victim after a night of partying; (2) "the Mack statement"—statements made by Bruno to another inmate, Curtis Mack, expressing his desire to have the rape victim killed; and (3) "the Walters statement"—Bruno's conversation with Corporal Frank Walters, an undercover officer with the Maryland State Police, in which Bruno repeated his desire to have the rape victim killed and agreed to a price for the murder. The trial court denied Bruno's motion to suppress all three of these statements.

After the denial of his suppression motion, Bruno reaffirmed his not guilty plea; however, he decided to waive his right to a jury trial and agreed to a trial by stipulated evidence.[1] Bruno's actions were prompted by his desire to preserve the right to appeal the denial of his suppression motion and to accept the State's offer that, if he proceeded by stipulated evidence, it would place all charges other than first degree rape on the stet docket. Bruno further benefited from the State's promise to recommend a sentence of life with all but twenty (20) years suspended, to run concurrently with any sentence Bruno received in a companion case charging him with solicitation to murder.[2] After the judge extensively questioned Bruno and

---

1. Although the court, the prosecutor, and defense counsel made reference to a "Not Guilty Statement of Facts," it is clear from the record that the parties were not agreeing as to ultimate fact, but only as to what testimony would be offered by the State's witnesses.

2. As a result of Bruno's efforts to have the rape victim killed, he was charged and subsequently convicted of solicitation to commit murder and obstruction of justice.

determined that he freely, knowingly, and voluntarily waived his right to a jury trial and elected to stipulate to the State's evidence, the State proffered a summary of their witnesses' testimony.[3] The following dialogue occurred:

"[STATE'S ATTORNEY]: Your Honor, in the early morning hours of March 29, 1990, a woman by the name of Kimberly W.,[4] approximate age 24, was at a bar called Lucky Spirits in Baltimore City. She met up with a group of five men, among them Michael Bruno, the Defendant. Mr. Bruno was on an, I guess bar hopping would be a good term, with the other men.

As the evening progressed, Miss W. became part of the group, and shortly before closing, Miss W. left the bar in Mr. Bruno's limousine with the five men, including Mr. Bruno. They went on a rather circuitous route, through Baltimore County, ultimately ending up in Harford County.

At some point, two of the men, Chuckie and Ricky Frazier, left the group, leaving Miss W. with Michael Bruno, Robert Ambrose, and Andre Whims.

There came a time when Mr. Bruno and/or his companions demanded sexual relations with Miss W. The limousine was parked at the time. Miss W. refused these advances.

At that point, Mr. Ambrose and Mr. Whims held down Miss W. and Mr. Bruno started to remove her clothing forcefully. Miss W. resisted. She was kicking and pushing at them, and telling them to stop.

Mr. Bruno obtained an electronic stun gun device that delivers shocks of relatively high voltage of electricity, and shocked her with it on her bare skin numerous times.

While she was being held down by his companions and after the weapon, which she perceived to be a dangerous

---

3. This summary apparently was based upon the would-be testimony of the rape victim, police investigators, the doctor, the hospital, Smith, Mack, and Corporal Walters.

4. We will omit the surname of the rape victim.

and deadly weapon, was used upon her, she submitted, and Mr. Bruno engaged in forceful vaginal intercourse with her forcefully, and against her consent, while the two companions were assisting in subduing her.

Other sexual acts took place, all against her will, and without her consent. There were several acts of sexual intercourse, acts of sodomy, and battery.

Ultimately, when the sexual events were over, Mr. Bruno and his companions began to discuss the possibility of having breakfast. Miss W., realizing this would involve going to a place where there were other people, and a place of safety, agreed to do so. They came to Denny's in the Fallston area of Harford County. There, she was let out of the vehicle and approached a waitress.

The police were summoned. Mr. Bruno and his companions were all arrested. While in jail, in the Harford County Detention Center, under this charge, pending trial, Mr. Bruno admitted to a fellow inmate by the name of Norman Smith, that he had raped Miss W.

He also had a conversation with a fellow inmate by the name of Curtis Mack concerning killing Miss W., the State's witness. Mr. Mack made arrangements to have Mr. Bruno contact Corporal Frank Walters of the Maryland State Police, who was identified to Mr. Bruno as Tony, a professional hit man who would take care of Miss W. for him.

Mr. Bruno contacted Corporal Walters and engaged in a conversation with him, which has been marked as a State's exhibit. We would ask it be included as an exhibit, the transcript of the conversation, included as an exhibit in the Statement of Facts.

THE COURT: Be accepted.

[STATE'S ATTORNEY]: Thank you. In this conversation Mr. Bruno solicited the murder of Miss W. for a sum of money which was agreed for approximately $1,500.

Just to clear it up, I am not sure I precisely phrased it regarding Mr. Mack. At some point Mr. Bruno and Mr. Mack had a conversation regarding Mr. Bruno's desire to

kill Kimberly W. Mr. Mack gave the name, phone number, and the name "Tony," which was Frank Walters of the Maryland State Police, which brings about the transcript we have asked to be included.

The terminating point of the transport of Miss W. in the course of the rape was, of course, Harford County, which, of course, gives us jurisdiction. That would be the Statement of Facts.

* * * * * *

[DEFENSE ATTORNEY]: Your Honor, in light of the agreement, if that's—if the State's witnesses were to testify in this case, that would be their testimony. Given that, we have no further additions, corrections, deletions, or modifications.

THE COURT: Argument as to whether or not the Statement of Facts is sufficient to constitute the offenses charged?

[DEFENSE ATTORNEY]: We will submit.

THE COURT: Based on the Statement of Facts, I am convinced beyond a reasonable doubt and to a moral certainty the Defendant is guilty of First Degree Rape of Kimberly W., and that he had vaginal intercourse with her against her will by use of force, with assistance of others, and the use of a weapon.

So, for that reason, a finding of guilty as to Count 1, First Degree Rape, will be entered."

There was a further stipulation to incorporate relevant testimony from the motions hearing regarding Bruno's statements to Smith, Mack, and Walters. Bruno offered no evidence and called no witnesses to controvert the stipulated testimony, and expressly acknowledged that the credibility of the State's witnesses was not at issue.

On appeal, the Court of Special Appeals addressed Bruno's Sixth Amendment, right-to-counsel challenge to the statements to Smith, Mack, and Walters. The intermediate appellate court determined that the Smith statement, in which

Bruno admitted the rape, was properly received because there was "nothing in [the] record to indicate that Smith was in any way a State agent when that statement was made or that he had encouraged or solicited the statement, directly or indirectly, on behalf of the State." *Bruno v. State*, 93 Md.App. 501, 515, 613 A.2d 440, 447 (1992). As for the statements to Mack and Walters concerning Bruno's desire to kill the rape victim, however, the intermediate appellate court concluded that these were obtained in violation of Bruno's Sixth Amendment right to counsel, and thereby inadmissible based on its interpretation of *Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), and related cases. Despite its conclusion that the Mack and Walters statements were erroneously admitted in Bruno's rape trial, the court found any error harmless beyond a reasonable doubt. In light of the stipulated evidence, the Court of Special Appeals believed that the erroneously admitted evidence "could not possibly have influenced the [trial] court's verdict in any way." *Bruno*, 93 Md.App. at 517, 613 A.2d at 448. Therefore, the court affirmed Bruno's rape conviction.

Before this Court, Bruno contends that the Court of Special Appeals erred by finding the improperly admitted statements harmless error. First, Bruno asks us to analogize a not guilty plea, together with a stipulation as to the State's evidence, to a procedure permitted in some jurisdictions called a conditional guilty plea. He further contends that, if we analogize a trial by stipulated evidence to a conditional guilty plea, we should then follow cases that have refused to apply harmless error to an erroneous refusal to suppress evidence followed by a conditional guilty plea. Those courts have reasoned that there is no way to assess the impact erroneously admitted evidence had upon a defendant's decision to plead conditionally guilty. *See, e.g., People v. Miller*, 33 Cal.3d 545, 555–56, 189 Cal.Rptr. 519, 526–27, 658 P.2d 1320, 1327–28 (1983); *People v. Grant*, 45 N.Y.2d 366, 379–80, 408 N.Y.S.2d 429, 437, 380 N.E.2d 257, 265 (1978); *Jones v. Wisconsin*, 562 F.2d 440, 445 (7th Cir. 1977); *People v. Hill*, 12 Cal.3d 731, 768, 117 Cal.Rptr. 393, 421, 528 P.2d 1, 29 (1974).

The State, however, points out that Maryland has not adopted a conditional guilty plea procedure, and further, Bruno did not plead guilty; therefore, cases dealing with conditional guilty pleas are irrelevant. The State asserts that "the focus of the harmless error analysis should not be on whether the error had any effect on Bruno's decision to enter into the particular plea, but rather should be on the effect of the erroneously admitted evidence on the decision of the fact-finder."

■ For reasons we will discuss below, we believe the Court of Special Appeals properly invoked the harmless error rule under the facts of this case. We emphasize that this decision only addresses the propriety of applying harmless error. Bruno does not challenge the intermediate appellate court's ruling on the admissibility of "the Smith statement." In its conditional cross-petition, the State does challenge the ruling on the inadmissibility of the Mack and Walters statements. The State presents the question of "[w]hether the Court of Special Appeals erred in holding that evidence that Bruno solicited the murder of the rape victim was inadmissible in his rape trial under *Maine v. Moulton* [474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985) ]." Because we granted certiorari to review the harmless error issue and because we find that any error would indeed be harmless, we will not address the issue raised in the conditional cross-petition. We will assume, *arguendo,* the correctness of the Court of Special Appeals with regard to the inadmissibility of Bruno's statements to Mack and Walters under the Sixth Amendment right to counsel.

## II.

We begin our analysis with a discussion of conditional guilty pleas. A conditional guilty plea, where permitted by statute or rule, generally allows a defendant to plead guilty, yet still retain the right to appellate review of certain pretrial motions. As implemented by the Federal Rules of Criminal Procedure, a defendant must preserve, in writing, appellate review of the

adverse determination of any specified pretrial motion when entering his conditional plea of guilt, and court approval as well as the consent of the government are required. Fed. R.Crim.P. 11(a)(2). If a defendant prevails on appeal, withdrawal of the plea is permitted. *Id.* The basis for allowing such a plea is that it "conserv[es] prosecutorial, defense and judicial resources . . . by permitting the defendant to appeal an adverse pretrial ruling without undergoing a full trial to preserve the point." *United States v. Burns,* 684 F.2d 1066, 1072 (2d Cir.1982), *cert. denied,* 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983) (citations omitted). *See also* Fed. R.Crim.P. 11, Notes of Advisory Committee (pointing out that the conditional guilty plea avoids the waste of resources that occurs when "a defendant who has lost one or more pretrial motions go[es] through an entire trial simply to preserve the pretrial issues for later appellate review"); *but see Burns,* 684 F.2d at 1072 ("When defendants are allowed to raise on appeal a barrage of claims that are not clearly dispositive of the case, however, the balance of policy considerations is less clear. The practice is no longer likely to serve the interests of judicial economy. Assuming that the probability of reversal on at least one issue increases as the number of issues appealed increases, broad-ranging conditional guilty pleas will be more likely to lead to an elaborate sequence of plea, appeal, trial and reappeal. Such a sequence hardly conserves the judicial system's resources. . . .").

Bruno directs our attention to cases dealing with conditional guilty pleas in light of his decision to elect an abbreviated form of trial on stipulated evidence. We recognize that several courts have determined that harmless error should not be applied where there is an improper denial of a suppression motion followed by a conditional guilty plea. For example, in *Hill, supra,* the Supreme Court of California determined that an appeal from the denial of a suppression motion, expressly authorized by statute after a guilty plea, prevented the court from invoking harmless error when some, but not all, of the evidence should have been suppressed. *Id.,* 12 Cal.3d at 769, 117 Cal.Rptr. at 421–22, 528 P.2d at 29–30. The court de-

clared that, with such a limited record, an "unacceptable degree of appellate speculation" would result if the appellate court tried to determine, based only on the evidence subject to the suppression motion, the respective strength of the prosecution's or defense's case. *Id.*, 12 Cal.3d at 768, 117 Cal.Rptr. at 421, 528 P.2d at 29. Unsure of whether the defendant would again plead guilty with knowledge that some of the evidence was inadmissible and based on the "magnitude of the consequences of a guilty plea," the court declined to find that the erroneous refusal to suppress part of the evidence was harmless. *Id.*, 12 Cal.3d at 769, 117 Cal.Rptr. at 421, 528 P.2d at 29. *See also Miller*, 33 Cal.3d at 553, 189 Cal.Rptr. at 525, 658 P.2d at 1326 (following *Hill*); *Grant*, 45 N.Y.2d 366, 408 N.Y.S.2d at 435–37, 380 N.E.2d at 263–65; *Jones v. Wisconsin*, 562 F.2d at 445–46 (expressing agreement with *Hill*).

We first note that the *Hill* decision has not escaped criticism. In *People v. Salazar*, 93 Cal.App.3d 912, 156 Cal.Rptr. 125, 127 (1979), an intermediate California appellate court questioned the soundness of *Hill*'s apparently absolute rule barring harmless error analysis and applied the doctrine where it could not "conceive of a rational basis for concluding that the [defendant's] guilty plea was triggered by the erroneous refusal to suppress some of the prosecution's evidence...." *See also People v. Carney*, 117 Cal.App.3d 36, 172 Cal.Rptr. 430, 439 n. 2 (1981) (Staniforth, J., concurring and dissenting) ("In certain factual situations, the blind acceptance of the *Hill* ... rule leads to an absurd, unnecessary time wasting result...."), *rev'd*, 34 Cal.3d 597, 194 Cal.Rptr. 500, 668 P.2d 807 (1983), *rev'd*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). Moreover, in *People v. Ingram*, 122 Cal.App.3d 673, 176 Cal.Rptr. 199 (1981), a California appellate court acknowledged the important distinction, for harmless error purposes, between a conditional guilty plea and a not guilty plea with stipulations. The court noted that the defendant did not plead conditionally guilty as in *Hill* but "submitted the cause to the trial court on the testimony taken at the preliminary hearing," and thus the "unacceptable degree of appellate speculation" present in *Hill* was not a

concern in light of the more expansive record. *Id.*, 122 Cal.App.3d at 682, 176 Cal.Rptr. at 204. The *Ingram* court recognized that the harmless error rule would be applicable where the case was submitted based on the testimony taken at the preliminary hearing. *Id.*

Conditional guilty plea cases refusing to apply harmless error analysis after a defendant pleads guilty are inapposite to the instant case. First, and most important, Bruno *did not* plead guilty, and thus we are neither concerned with the "magnitude of the consequences of a guilty plea," nor with how an erroneous refusal to suppress evidence impacted upon a decision to plead "guilty." By pleading not guilty, Bruno was convicted after a trial, albeit, one based on stipulated evidence. Bruno enjoyed the right to full appellate review, as well as benefited from the State's sentence recommendation and its decision to place other charges on the stet docket. Unlike a guilty plea, under which the State would be relieved of its burden of proof, *Moyer v. State*, 225 Md. 156, 158, 169 A.2d 409, 410 (1961), Bruno's not guilty plea required the State to present stipulated evidence sufficient to constitute first degree rape or risk an acquittal by the trial judge. *See Barnes v. State*, 31 Md.App. 25, 28, 354 A.2d 499, 501 (1976) (Orth, C.J.) (stating that, even in a trial based upon agreed statement of facts, accused must be acquitted if evidence is insufficient to sustain conviction). Moreover, Bruno had the right to present exculpatory or mitigating evidence. Although Bruno's counsel declined the opportunity to present a closing argument, the trial judge did ask for any "[a]rgument as to whether or not the Statement of Facts is sufficient to constitute the offenses charged." As noted by the Supreme Court of California in *Bunnell v. Superior Court of Santa Clara County*, 13 Cal.3d 592, 602, 119 Cal.Rptr. 302, 308, 531 P.2d 1086, 1092 (1975), "[n]otwithstanding [any bargained-for agreement] or the fact that conviction is a foregone conclusion, a submission of the cause for decision on the [preliminary] transcript *is a trial.*" (Emphasis added). Bruno's conviction, based upon stipulated evidence as well as the incorporated relevant portions of the suppression hearing's testimony, was

rendered by way of a trial. Because Bruno proceeded on a not guilty plea and preserved rights incident to a trial, we see no reason to modify the harmless error doctrine based on the manner of that trial chosen by the defendant.[5]

We are also unpersuaded by those cases finding harmless error inappropriate in conditional guilty plea appeals because they primarily rest upon interpretations of statutes that expressly enable defendants to appeal certain rulings even after entering a guilty plea. *See Hill,* 12 Cal.3d at 769, 117 Cal. Rptr. at 421–22, 528 P.2d at 29 (construing Cal.Penal Code § 1538.5(m) (West 1982, Cum.Supp.1993)); *Salazar,* 93 Cal. App.3d 912, 156 Cal.Rptr. at 127 (*"Hill* [is], after all, merely [an] interpretation[ ] of the legislative intent behind section 1538.5, subdivision (m). . . ."); *Grant,* 45 N.Y.2d 366, 408 N.Y.S.2d at 435–37, 380 N.E.2d at 263–65 (interpreting statute now codified at N.Y.Crim.Proc.Law § 710.70(2) (Consol.1986)); *Jones v. Wisconsin,* 562 F.2d at 445–46, and *State v. Monahan,* 76 Wis.2d 387, 251 N.W.2d 421, 426 (1977) (discussing Wis.Stat.Ann. § 971.31(10) (West 1985)). In *Jones v. Wisconsin,* for example, the United States Court of Appeals for the Seventh Circuit acknowledged that Wisconsin's statute "encourages guilty pleas" and this objective "is obtained by guaranteeing to the defendant that he will have a full trial in the event that after appeal the state's evidence is weaker than it appeared at the time of the trial court's evidentiary rulings." *Jones v. Wisconsin,* 562 F.2d at 445–46. Similarly, the Supreme Court of California in *Hill* made clear that its "decision operates to further the Legislature's intention of encouraging a guilty plea by a defendant whose defense rests on the asserted illegality of a search and seizure." *Hill,* 12 Cal.3d at 770 n. 36, 117 Cal.Rptr. at 422 n. 36, 528 P.2d at 30 n. 36.

---

5. In very limited instances, we have held that, for purposes of conducting a voluntary litany associated with entering into a guilty plea, *see* Maryland Rule 4–242(c), a "not guilty agreed statement of facts" is the functional equivalent of a guilty plea. *See Sutton v. State,* 289 Md. 359, 366, 424 A.2d 755, 759 (1981). Without expressing any opinion on whether such a litany was required in this case, the trial judge painstakingly assured that Bruno voluntarily waived his jury trial and agreed to stipulate to the State's evidence.

Those jurisdictions, "[a]s a matter of state public policy, [legislatively] abandoned the guilty-plea-waiver rule." *State v. Riekkoff*, 112 Wis.2d 119, 332 N.W.2d 744, 747 (1983). Maryland has not done so, *see* Md.Rule 4–242(a), and we are unwilling to judicially create such a plea by equating Bruno's not guilty plea to a guilty plea and creating an exception to the rule that a guilty plea waives all nonjurisdictional defects. In light of this choice, it is unnecessary to further the objectives of a conditional guilty plea by following those decisions that refuse to apply harmless error.[6]

Our conclusion that harmless error is applicable to the instant case finds further support in federal court decisions that have criticized conditional guilty pleas. Even prior to the enactment of Federal Rule of Criminal Procedure 11(a)(2), a few federal courts permitted conditional guilty pleas. See discussion in *United States v. DePoli*, 628 F.2d 779, 781 n. 1 (2d Cir.1980). Others, however, refused to sanction the conditional plea fearing that, without a full record before it, an appellate court would be forced to deal with issues that "could have been avoided by invocation of the doctrine of harmless error...." *United States v. Cox*, 464 F.2d 937, 945 (6th Cir.1972). In *Cox*, for instance, the United States Court of Appeals for the Sixth Circuit acknowledged that, based on a conditional guilty plea, "[w]e are left to conjecture whether the prosecution had additional evidence to present against the defendants." *Id.* See also Fed.R.Crim.P. 11, Notes of Advisory Committee (stating that, "[w]ith respect to the objection

---

**6.** In his brief, Bruno relies on cases interpreting California's conditional guilty plea statute to prohibit the use of harmless error analysis in appeals taken pursuant thereto. Interestingly, California's conditional guilty plea statute fails to provide for appellate review of the denial of a motion to suppress admissions on fifth or sixth amendment grounds. *See People v. Mattson*, 50 Cal.3d 826, 850–51, 268 Cal.Rptr. 802, 819, 789 P.2d 983, 1000 ("Section 1538.5(m) is properly used only to exclude evidence obtained in violation of a defendant's state and/or federal (Fourth Amendment) right to be free of unreasonable search and seizure."), *cert. denied*, 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 595 (1990). Thus, in California, a defendant in Bruno's position could not benefit from the no-harmless-error rule first announced in *People v. Hill*, 12 Cal.3d 731, 117 Cal.Rptr. 393, 528 P.2d 1 (1974).

that conditional pleas circumvent application of the harmless error doctrine, it must be acknowledged that '[a]bsent a full trial record, containing all the government's evidence against the defendant, invocation of the harmless error rule is arguably impossible' ") (quoting Comment, *Conditioned Guilty Pleas: Post–Guilty Plea Appeal of Nonjurisdictional Issues,* 26 U.C.L.A.L.Rev. 360, 380 (1978)). The United States Court of Appeals for the Fifth Circuit, however, recognized a distinction between a conditional guilty plea and a trial conducted pursuant to a not guilty plea together with "stipulations which expressly and effectively admit sufficient facts to support an adjudication of guilty ... but explicitly reserve[ ] the right to appeal." *United States v. Mendoza,* 491 F.2d 534, 536 (5th Cir.1974). Unlike a conditional guilty plea, the latter case provides the "vital facts" upon which to review a trial court's actions. *See id.* at 538; *see also United States v. Lace,* 669 F.2d 46, 58 n. 7 (2d Cir.) (Newman, J., concurring) (suggesting that, to prevent the use of conditional guilty pleas as "a device to circumvent the harmless error rule ... [w]hen multiple pretrial rulings concerning evidence are to be challenged, one solution would be for the parties to stipulate, for purposes of the conditional guilty plea, to an agreed statement of the admissible evidence apart from the challenged rulings, with withdrawal of the plea permitted only upon an appellate determination that a pre-trial ruling was not only erroneous *but prejudicial in light of the stipulated evidence"* (emphasis added)), *cert. denied,* 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 106 (1982). Thus, we find inapposite those cases holding harmless error inapplicable in an appeal from a conditional guilty plea.

Bruno also relies on *United States v. Weber,* 668 F.2d 552 (1st Cir.1981), *cert. denied,* 457 U.S. 1105, 102 S.Ct. 2904, 73 L.Ed.2d 1313 (1982), to support the contention that harmless error should not be applied to the inadmissible statements to Mack and Walters in light of Bruno's agreement to stipulated evidence. In *Weber,* after unsuccessfully seeking to suppress evidence, the defendants waived a jury trial and submitted to trial by agreed facts, pretrial testimony, and exhibits from the

suppression hearing. *Id.* at 562. The United States Court of Appeals for the First Circuit noted that "[d]efendants' stipulations and waivers were made on the assumption and condition not merely that their right of appeal was preserved, but that the evidence was properly admissible against them. In fairness, this should mean *all* the evidence." *Id.* at 562 (footnote omitted) (emphasis added). Influenced by conditional guilty plea cases, the *Weber* court, upon finding some of the evidence inadmissible, held that harmless error could not be applied and granted the defendants a new trial. For the reasons previously discussed, we decline to follow *Weber* and refuse to judicially create the functional equivalent of a conditional guilty plea which bars harmless error analysis.[7]

## III.

 We continue our discussion by briefly mentioning the effect of a not guilty and guilty plea on a defendant's right to appellate review. Ordinarily, a defendant is entitled to appellate review after a final judgment in a criminal case. *See* Maryland Code (1974, 1989 Repl.Vol.), Courts and Judicial Proceedings Article, § 12–301. By pleading guilty, however, a defendant forfeits any right to a direct appeal, *id.* § 12–302(e), and ordinarily waives all nonjurisdictional defects in the pro-

---

7. Bruno argues that by agreeing to the stipulation, the parties and trial court assumed that all of the evidence sought to be suppressed was necessary to prove his guilt. In light of this "assumption," Bruno maintains that no error can be deemed harmless. However, an examination of the record does not bear out this contention. We fail to see the "assumption" that the inadmissibility of any portion of the evidence sought to be suppressed would be dispositive of Bruno's appeal and thereby necessitate a new trial. If Bruno was led to believe he was entitled to a new trial upon an appellate court's ruling that any one of the statements preserved for appeal was inadmissible, there is nothing in the record to show that the prosecution or the court created this belief. Thus, post-conviction relief might be the proper avenue for asserting any argument that Bruno acted upon improper advice of counsel. *See Stewart v. State,* 319 Md. 81, 92, 570 A.2d 1229, 1234 (1990) ("We have consistently held that the desirable procedure for determining claims of inadequate assistance of counsel, when the issue was not presented to the trial court, is by way of the Post Conviction Procedure Act.").

ceedings. *See Sutton v. State*, 289 Md. 359, 365, 424 A.2d 755, 758–59 (1981); *Treadway v. Warden*, 243 Md. 680, 682, 220 A.2d 907, 908 (1966); *Deyermond v. State*, 19 Md.App. 698, 706, 313 A.2d 709, 714 (1974) ("[A]ny error in the trial court's denial of [defendant's] motion to suppress the evidence was waived by the tender of the plea of guilty . . . and its effective acceptance by the court.").

■ Although Maryland does not authorize a conditional guilty plea, *see* Md.Rule 4–242(a), defendants have preserved appellate review and avoided the necessity of a full trial by pleading not guilty, and either stipulating to the testimony of the State's witnesses (*i.e.*, stipulated evidence) or entering into an "agreed statement of facts" (*i.e.*, stipulated facts). *See, e.g., Polk v. State*, 85 Md.App. 648, 650, 584 A.2d 1274, 1275 (1991); *Ward v. State*, 52 Md.App. 664, 667, 451 A.2d 1243, 1245 (1982). As noted by Judge Joseph F. Murphy, Jr. in his handbook on Maryland evidence law, stipulations of evidence and stipulations of fact "are frequently used as shortcuts to formal proof." Joseph F. Murphy, Jr., Maryland Evidence Handbook § 1003, at 380 (1989). In *Barnes v. State*, 31 Md.App. 25, 35, 354 A.2d 499, 505–06 (1976), Judge Orth, writing as Chief Judge for the Court of Special Appeals, explained the difference between an agreed statement of facts and stipulated evidence as follows:

"There is a distinction between an *agreed* statement of facts and evidence offered by way of stipulation. Under an agreed statement of facts both [the] State and the defense agree as to the ultimate facts. Then the facts are not in dispute, and there can be, by definition, no factual conflict. The trier of fact is not called upon to determine the facts as the agreement is to the truth of the ultimate facts themselves. There is no fact-finding function left to perform. To render judgment, the court simply applies the law to the facts agreed upon. If there is agreement as to the facts, there is no dispute; if there is dispute, there is no agreement. It would be well, to avoid confusion, that when the parties are in agreement on the facts, the statement of them

begin with language to the effect, 'It is agreed that the following facts are true....'

On the other hand, when evidence is offered by way of stipulation, there is no agreement as to the facts which the evidence seeks to establish. Such a stipulation only goes to the content of the testimony of a particular witness if he were to appear and testify. The agreement is to what the evidence will be, not to what the facts are. Thus, the evidence adduced by such a stipulation may well be in conflict with other evidence received. For the trier of fact to determine the ultimate facts on such conflicting evidence, there must be some basis on which to judge the credibility of the witness whose testimony is the subject of the stipulation, or to ascertain the reliability of that testimony, to the end that the evidence obtained by stipulation may be weighed against other relevant evidence adduced.... We note that the usual way of introducing such a stipulation— 'If John Doe were to testify, he would testify as follows....'—makes clear the status of the evidence so offered." (Emphasis in original).

In the instant case, Bruno pled not guilty, as emphasized by his counsel.[8] Although the court, prosecutor, and defense counsel referred to Bruno's plea as a "Not Guilty Statement of Facts," it is also clear that the parties *did not* have an agreement as to *ultimate* fact, but merely an agreement as to what the State's witnesses would attest to if they were called to testify. Recognizing that conflicts in stipulated testimony may make such a form of trial inappropriate, *see Atkinson v. State*, 331 Md. 199, 203 n. 3, 627 A.2d 1019, 1020–21 n. 3 (1993); *Polk*, 85 Md.App. at 656–57, 584 A.2d at 1278; *Barnes*, 31 Md.App. at 36, 354 A.2d at 506, the trial judge emphasized that he couldn't "resolve conflicts" based on the stipulation. Whereupon, Bruno's attorney indicated no intent to contradict the State's proffer, and stated (and later reiterated) that, "we

---

8. At least twice, defense counsel stated "this is a Not Guilty agreed Statement of Facts, *not a Guilty plea.*" (Emphasis added).

agree if the State's witnesses were to testify, that would be their testimony."

Because he pled not guilty and in effect had a trial, Bruno retained his right to full appellate review. Bruno, however, now suggests that the harmless error doctrine should not be applicable to his appeal and he is entitled to a new trial because of insignificant errors. He contends that, because he proceeded by stipulating to the State's evidence rather than undergoing a full, adversarial trial, he retains the benefit of full appellate review, but the State forfeits the benefit of the harmless error rule. We refuse to allow Bruno to "have his cake and eat it too." *Jones v. State,* 77 Md.App. 193, 199, 549 A.2d 1150, 1153 (1988) (Bell, Robert M., J.) (rejecting defendant's contention that his conviction should be reversed because he was not granted procedural requirements associated with a guilty plea after defendant obtained a direct appeal based on his not guilty plea with an agreed statement of facts).

Guiding this decision is our belief that a defendant should not be able to circumvent the application of the harmless error rule because he or she opts to proceed to trial by stipulated evidence or an agreed statement of facts. The harmless error doctrine is based on "appellate judgments that a retrial is not justified if the error has not affected the rights of the parties," *Dorsey v. State,* 276 Md. 638, 647, 350 A.2d 665, 671 (1976), and a recognition that "[a]n accused has a constitutional right to a 'fair trial' but not necessarily to that seldom experienced rarity, a perfect trial." *State v. Babb,* 258 Md. 547, 552, 267 A.2d 190, 193 (1970). In *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), the United States Supreme Court stated its belief that "the harmless-error doctrine is essential to preserve the 'principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and [it] promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.'" *Id.,* 499 U.S. at 308, 111 S.Ct. at 1264, 113 L.Ed.2d at 330 (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674, 684–85

(1986) (citations omitted)). In Maryland, the harmless error doctrine's vital role in appellate review is further evidenced by the enactment of Md.Rule 8–131, which states that "the Court of Appeals may consider whether [an] error was harmless or nonprejudicial even though the matter of harm or prejudice was not raised in the petition or in a cross-petition."

In essence, Bruno asks us to create a *per se* rule, granting a defendant a new trial whenever an appellate court rules any challenged evidence inadmissible, simply because the trial was conducted on stipulated evidence, and regardless of whether the erroneously admitted evidence lends only an insignificant inference of guilt, is cumulative, or for any other reason would not affect the trial judge's ultimate decision. We decline to do so. For instance, suppose that a defendant pleads not guilty and proceeds on stipulated evidence following a denial of a motion to suppress seven separate confessions to the same crime. Further assume that, on appeal, only the last of these confessions is ruled inadmissible, leaving six properly admitted confessions. Refusing to apply harmless error to the seventh, cumulative confession, simply because the trial was by stipulated testimony, would in no way promote " 'public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.' " *Fulminante*, 499 U.S. at 308, 111 S.Ct. at 1264, 113 L.Ed.2d at 330 (quoting *Van Arsdall*, 475 U.S. at 681, 106 S.Ct. at 1436, 89 L.Ed.2d at 685 (citations omitted)).

Defendants should not be able to avoid the harmless error rule and obtain appellate review of pretrial rulings admitting clearly insignificant or cumulative evidence. Nor should convictions, even convictions on stipulated testimony, be reversed when a judge properly denied a motion to suppress most of the incriminating evidence, but erred in failing to suppress relatively insignificant items. A trial on stipulated evidence is a trial; it is not a circuitous method of obtaining appellate review of rulings admitting immaterial evidence. Neither the State nor the defendant, nor the two acting in concert, can mandate appellate relief for rulings which are harmless be-

yond a reasonable doubt. When faced with ample evidence of a defendant's guilt, other courts have applied harmless error, notwithstanding the defendant's use of stipulations. *See State v. Houchins,* 79 Or.App. 66, 717 P.2d 665, 666 (1986) (concluding that erroneous refusal to suppress evidence was harmless in light of "overwhelming evidence to support the convictions," where defendants proceeded to trial on stipulated facts); *People v. Sanders,* 55 Ill.App.3d 178, 13 Ill.Dec. 186, 191, 370 N.E.2d 1213, 1218 (1977) (finding trial court's refusal to suppress one of three statements that "lent only inferential support" of guilt was harmless in light of defendant's stipulation to other evidence and proper admission of two additional statements), *rev'd sub nom. United States ex rel. Sanders v. Rowe,* 460 F.Supp. 1128, 1146 (N.D.Ill.1978).

■ Perhaps anticipating our decision that harmless error may be applied in an appeal from a trial by stipulated evidence, Bruno argues that the admission of his statements to Mack and Walters cannot be deemed harmless beyond a reasonable doubt. Bruno is really suggesting that, in trials by stipulated evidence, the evidence stipulated to should rarely be considered harmless. Although Bruno's case is not as clear-cut as our above hypothetical case involving seven confessions, it is nonetheless a proper setting for invocation of the harmless error rule. The Court of Special Appeals ruled inadmissible the Mack and Walters statements, in which Bruno indicated his desire to have the rape victim killed. At best, these statements lend only inferential support to the conclusion that Bruno committed rape, *i.e.,* they indicate "consciousness of guilt." Arguably, the statements "show not so much a consciousness of guilt [but] simply a desire to get out of jail and escape the prosecution." *Bruno,* 93 Md.App. at 518, 613 A.2d at 449. The intermediate appellate court, however, found that Bruno's statement to Smith, in which Bruno expressly admitted that he forcibly raped the victim, was properly admitted. Of all the evidence that Bruno sought to suppress, the statement to Smith was clearly the most damaging. While the proffer at trial included that "Bruno admitted to a fellow

inmate by the name of Norman Smith that he had raped Miss W.," the stipulation also incorporated Smith's applicable testimony from the suppression hearing. At that hearing, Smith testified that Bruno approached him and told him about his rape case. Smith further testified about Bruno's description of the incident, relating that "somebody had the stun gun, and they had forced the girl to have sex with them." Smith also stated that, according to Bruno, "[i]t was a forced rape."

We are confident that the statements to Mack and Walters "in no way influenced the [judge's] verdict." *Dorsey*, 276 Md. at 659, 350 A.2d at 678. The trial judge had overwhelming evidence of guilt properly before him, consisting of the admission to Smith of the rape, as well as the uncontroverted, stipulated evidence supporting the conviction for first degree rape.[9] Under these circumstances, we believe that an appellate court may properly find the erroneous admission of two statements lending only inferential support of guilt was harmless beyond any reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–11 (1967) ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."); *Milton v. Wainwright*, 407 U.S. 371, 372–73, 92 S.Ct. 2174, 2175–76, 33 L.Ed.2d 1, 4 (1972) (finding incriminating statements harmless beyond a reasonable doubt, even if erroneously admitted in violation of Sixth Amendment rights, where other overwhelming evidence of guilt was present).

We should briefly address the propriety of deeming an error harmless where a defendant stipulates to evidence sufficient for conviction in order to preserve a pretrial suppression

---

9. The stipulated evidence, in pertinent part, detailed that, while the rape victim "was being held down by [Bruno's] companions and after [a stun gun], which she perceived to be a dangerous and deadly weapon, was used upon her, she submitted, and Mr. Bruno engaged in ... vaginal intercourse with her forcefully, and against her consent, while the two companions were assisting in subduing her."

motion challenging only *one item* of evidence which was improperly admitted, or where a defendant stipulates to preserve his challenge to multiple pieces of evidence, *all* of which are ruled inadmissible by the appellate court. While the harmless error rule is applicable to all appeals, even appeals on stipulated evidence, we point out that an appellate court should be very cautious in ever deeming these errors harmless. In such cases, defense counsel might consider obtaining a stipulation from the State, on the record, that the disputed evidence constitutes a significant part of the State's case. Today's decision simply addresses the situation before us, where multiple evidentiary rulings (*i.e.,* the admissibility of the Smith, Mack, and Walters statements) are preserved for appellate review, and only the less significant rulings are reversed, still leaving such overwhelming evidence of guilt that the appellate court can say the error was harmless beyond a reasonable doubt.

## IV.

We do not believe that today's ruling will force all future defendants to go through full, adversarial trials to preserve the right to challenge pretrial rulings denying the suppression of evidence. In cases where truly dispositive rulings are at issue, a not guilty plea with stipulated evidence still provides a defendant the opportunity for quicker trials without fearing the application of the harmless error doctrine on appeal. However, we decline to allow a defendant to stipulate to evidence in order to challenge multiple, nondispositive pretrial rulings on appeal, with a reversal mandated if even a single "harmless" ruling was incorrect.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.*

Dissenting opinion by ROBERT M. BELL, J.

ROBERT M. BELL, Judge dissenting.

The harmless error rule [1] applicable in this state is that enunciated in *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976). It is:

1. I will not question the proposition the majority so firmly embraces in this case—that harmless error analysis applies whenever, in order to preserve for appeal a trial court's ruling on a motion to suppress, a defendant enters a not guilty plea and proceeds to trial on stipulated evidence. There may be a rare case, perhaps the example proffered by the majority, *see* majority opinion at 692, in which the harmless error test enunciated in *Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976), will be satisfied even though a portion of the stipulated evidence has been held to be inadmissible. I am satisfied, however, that the case *sub judice* is not such a case.

In this case, the petitioner proceeded to trial on stipulated evidence in order to ensure that he was able to challenge the court's ruling on his suppression motion without having to go through a full trial. By proceeding in that fashion, the trial court's decision on guilt or innocence was, and was expected to be, totally predictable; the trial court would find the petitioner guilty. *See Bunnell v. Superior Court,* 13 Cal.3d 592, 119 Cal.Rptr. 302, 531 P.2d 1086 (1975); *see also* Jon D. Botsford, *Conditioned Guilty Pleas: Post Guilty Plea Appeal of Nonjurisdictional Issues,* 26 UCLA L.Rev. 360, 384 (1978). Viewed in this fashion, the petitioner's argument that the procedure he used is equivalent to the conditional guilty plea procedure, in which challenges to evidentiary rulings are permitted, and are recognized in a number of states and the federal courts, has considerable merit. *See Lefkowitz v. Newsome,* 420 U.S. 283, 290–91 n. 7, 95 S.Ct. 886, 890 n. 7, 43 L.Ed.2d 196, 203 n. 7 (1975) (distinction between the conditional guilty plea and a stipulation mere "infatuation with labels"); *Sutton v. State,* 289 Md. 359, 366, 424 A.2d 755, 759 (1981).

In *Lefkowitz v. Newsome,* the United States Supreme Court noted that the procedure whereby a criminal defendant could stipulate to all the state's evidence while entering a plea of not guilty benefits a defendant who intends to appeal his pretrial claim of unlawful search and seizure without the desire of going through an entire trial. 420 U.S. at 291, 95 S.Ct. at 890, 43 L.Ed.2d at 203. Upon the inevitable entry of judgment of conviction, the defendant is able fully to pursue his state appellate remedies. *See id.* at 290–91 n. 7, 95 S.Ct. at 890 n. 7, 43 L.Ed.2d at 203 n. 7; *see also Bunnell,* 13 Cal.3d 592, 119 Cal.Rptr. 302, 531 P.2d 1086 (stipulation procedure a viable method of preserving a defendant's statutory right of appeal on all issues).

By applying harmless error analysis in a case like the present one, the Court encourages the violation of the spirit, if not the letter, of the parties' agreement. Moreover, the Court encourages a party who is unable to anticipate the consequences of a not altogether successful appeal if he or she proceeds on a stipulated case, to proceed to trial simply to obtain review of a challenged motions ruling.

[W]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed "harmless" and a reversal is mandated. Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded— may have contributed to the rendition of the guilty verdict.

*Id.* at 659, 350 A.2d at 678 (footnote omitted). The test focuses on the effect of erroneously admitted or excluded evidence on the verdict rendered by the trier of fact. Whether that evidence played a role in the verdict is a question addressed to the reviewing court. Once the appellate court determines that error was committed, reversal is required unless it also determines, beyond a reasonable doubt, that the error did not influence the verdict; harmless error occurs only if the error played no role in the trier of fact's verdict. *State v. Enriquez,* 327 Md. 365, 374, 609 A.2d 343, 347 (1992); *Johnson v. State,* 325 Md. 511, 522, 601 A.2d 1093, 1097–98 (1992); *Bowie v. State,* 324 Md. 1, 11, 595 A.2d 448, 452 (1991); *Hook v. State,* 315 Md. 25, 42, 553 A.2d 233, 242 (1989).

I agree, unlike the majority, with the petitioner that "in trials by stipulated evidence, the evidence stipulated to should rarely be considered harmless." *See* majority opinion at 693. The petitioner merely states a well-settled proposition that harmless error analysis is supposed to be strict, that it "has been and should be carefully circumscribed." *Younie v. State,* 272 Md. 233, 248, 322 A.2d 211, 219 (1974). Indeed, in that case, quoting *People v. Jablonski,* 38 Mich.App. 33, 195 N.W.2d 777, 780 (1972), the Court stated the proposition even more graphically:

"Continued expansion of the harmless error rule will merely encourage prosecutors to get such testimony in, since they know that, if they have a strong case, such testimony will not be considered to be reversible error, yet if they have a weak case, they will use such testimony to buttress the case

to gain a conviction and then hope that the issue is not raised on appeal."

*Id.* at 248, 322 A.2d at 219. Although the majority does not expressly so state, the Court rejects that proposition and, so, continues the movement away from harmless error as an extraordinary, rather than ordinary, test. *See Rubin v. State,* 325 Md. 552, 592–93, 602 A.2d 677, 696–97 (1992) (Bell, J. dissenting).

In the case *sub judice,* the stipulated evidence consisted of a summary of the testimony of the State's witnesses, and evidence pertinent to the review of the court's ruling on the petitioner's motion to suppress. The testimony of three of those witnesses—two of whom, Mack and Smith were former inmates with the petitioner and the third, Walters, was a Maryland State Police undercover officer—related statements purportedly made to them by the petitioner. This testimony was the subject of the motion to suppress, which the trial court denied. The statement to Smith, which purportedly related the details of the rape, was held by the Court of Special Appeals to have been properly admitted. The opposite conclusion was reached as to those statements, involving the petitioner's desire to have the rape victim killed, made to Walters and Mack. The Court of Special Appeals, as did the majority, concluded the trial court's error was, however, harmless. As the majority views it:

> The trial judge [nevertheless] had overwhelming evidence of guilt properly before him, consisting of the admission to Smith of the rape, as well as the uncontroverted, stipulated evidence [of the facts and circumstances of the rape].

Majority opinion at 694 (footnote omitted). To reach that conclusion, both the majority and the Court of Special Appeals characterized the statements to Mack and Walters as "lend[ing] only inferential support to the conclusion that Bruno committed rape, *i.e.* they indicate 'consciousness of guilt.' " *Id.* at 693.

In harmless error analysis, the issue is not what evidence is available to the trier of fact, but rather what evidence the trier

of fact, in fact, used in reaching its verdict. *See Bruce v. State*, 318 Md. 706, 728, 569 A.2d 1254, 1265 (1990); *Hook*, 315 Md. at 42, 553 A.2d at 242. Thus, using what the majority perceives as an example of a clear case of harmless error, *see* majority opinion at 692, if there were available seven confessions, but the record revealed that the trier of fact relied only on the seventh, and not the other six, exclusion of the seventh confession would require reversal of the judgment of conviction, notwithstanding the other six confessions. That is so because the seventh confession would have contributed to the rendition of the guilty verdict. In short, it is not that the evidence has been, or could be, determined to be sufficient, or otherwise sufficient, that is of dispositive importance; rather it is whether the subject evidence actually influenced the trier of fact's decision to reach a guilty verdict. *Hook, supra; Bruce, supra.* This is true whether there has been a full trial or simply a trial on stipulated evidence.

Although the reviewing court, in conducting its harmless error analysis, must independently review the record, it cannot lose sight of the role of the trier of fact in assessing whether the State has met its burden of proof. The trier of fact's role involves, *inter alia*, weighing the evidence and resolving any credibility issues which might be presented. *See Dykes v. State*, 319 Md. 206, 224, 571 A.2d 1251, 1260–61 (1990); *Gore v. State*, 309 Md. 203, 522 A.2d 1338 (1987); *Wilson v. State*, 261 Md. 551, 566, 276 A.2d 214, 221 (1971); *Jacobs v. State*, 238 Md. 648, 650, 210 A.2d 722, 723–24 (1965). The appellate court does not weigh the evidence—not even when it is assessing the sufficiency of the evidence. *See Clemson v. Butler Aviation*, 266 Md. 666, 671, 296 A.2d 419, 422 (1972); *Gray v. Director*, 245 Md. 80, 84, 224 A.2d 879, 881 (1965). The determination of the sufficiency of the evidence requires the appellate court simply to decide whether evidence exists on the basis of which a rational trier of fact could find the elements of the crime charged beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560, 573 (1979); *Bloodsworth v. State*, 307 Md. 164, 167, 512 A.2d 1056, 1057 (1986).

In a stipulated case, unless the stipulation otherwise indicates, all of the evidence stipulated to is intended to be, and, in fact, is, considered by the trial court in deciding whether the defendant is guilty or not guilty. *Barnes v. State,* 31 Md.App. 25, 35, 354 A.2d 499, 565 (1976). Thus, in a stipulated case there is no need to speculate as to what evidence the trier of fact used in making its determination. While it may be true that less than all of the evidence stipulated to would suffice to sustain a finding of guilt, that is not what the stipulated case contemplates. By holding that the stipulated evidence is sufficient to sustain a finding of guilt and to render improperly admitted evidence harmless error, the majority in effect applies an "otherwise sufficient" test, in place of the *Dorsey* test. *See Rubin,* 325 Md. at 597, 602 A.2d at 696–97 (Bell, J. dissenting). Under that test, if the evidence is sufficient without the improper evidence, *i.e.,* the jury could have convicted the defendant without it, harm could not result from its admission. *Id.,* 602 A.2d at 696–97. I repeat, the Court, thereby, further expands the harmless error rule so as to make it the general rule rather than the exception. *See Younie,* 272 Md. at 248, 322 A.2d at 219, citing *Jablonski,* 195 N.W.2d at 780. This is not to be condoned.

I also find singularly unpersuasive the distinction that the majority draws between the statements. Conceivably, a statement made to an undercover police officer, in which the petitioner seeks to put a contract on the life of the victim, corroborated by another inmate, is more credible and would be more likely to influence the trier of fact's verdict as to the petitioner's guilt than simply a statement to a fellow inmate that he was involved in the crime. Certainly, it is well settled that evidence lending inferential support of a defendant's guilt by establishing consciousness of guilt is highly relevant and, therefore, routinely admitted for that purpose.

I therefore dissent.